UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAMION LINTON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 11-40132-TSH |
| ) | |
| JAMES SABA, ) | |
| ) | |
| Defendant ) | |

## MEMORANDUM AND ORDER OF DECISION

### September 25, 2014

HILLMAN, D.J.

### Nature of the Case

Damion Linton ("Petitioner") filed a Petition for a Writ of Habeas Corpus as a person in state custody in accordance with 28 U.S.C. § 2254. Following a jury trial in Massachusetts Superior Court, Petitioner was convicted of murder in the first degree by means of extreme atrocity or cruelty and was sentenced to life without parole. The conviction was affirmed by the Massachusetts Supreme Judicial Court ("SJC") on April 16, 2010. Petitioner seeks habeas relief on the following grounds:

>Ground One: The admission at trial of statements made by the deceased victim to her father about a prior assault by Petitioner violated Petitioner's constitutional right to confront witnesses against him.

>Ground Two: The conviction was not supported by sufficient evidence and therefore violated Petitioner's constitutional right to due process.

1

<u>Ground Three</u>: Defense counsel's failure to challenge the testimony of the Commonwealth's medical examiner and to pursue a "third-party murderer" theory violated Petitioner's constitutional right to the effective assistance of counsel.

**Background**

Petitioner was found guilty of murder in the first degree by means of extreme atrocity or cruelty for the murder of his wife, Andrea Harvey. The victim was found strangled in the apartment she shared with Petitioner on February 24, 2005. Following a jury trial in Massachusetts Superior Court, Petitioner was sentenced to state prison for a term of life without parole. Petitioner appealed to the SJC, challenging both the conviction and the order of the trial judge denying his motion for a new trial.[1] On April 16, 2010, the SJC affirmed Petitioner's conviction and the order denying Petitioner's motion for a new trial. *Commonwealth v. Linton*, 456 Mass. 534, 561, 924 N.E.2d 722 (2010). In its opinion, the SJC summarized in extensive detail the evidence presented at trial. *Id.* at 535-543, 924 N.E.2d 722. That evidence is briefly recounted below.

*Facts*

Petitioner began having an affair with Latricia Carter in February of 2005. Petitioner had not told Carter he was married. On the morning of February 23, Carter went to visit Petitioner at his apartment. When Carter arrived, Petitioner came down from the apartment and got into Carter's vehicle. Once Petitioner got into the car, Carter discovered that he had been in an argument with the victim inside the apartment. Still unaware that Petitioner was married, Carter demanded to know the nature of the relationship between Petitioner and the victim. Petitioner admitted that the victim lived with him. This made Carter upset, and she began to argue with

---
[1] Petitioner noticed his appeal in the SJC on April 23, 2007. On January 28, 2008, Petitioner filed a motion for a stay of the appeal. The motion was granted by the SJC. On February 25, 2008, Petitioner filed a Motion for New Trial. The motion was remanded to Middlesex Superior Court and denied without a hearing on June 30, 2008. On January 28, 2009, Petitioner noticed an appeal from the denial of the motion for a new trial. That appeal was consolidated with the direct appeal of conviction. *See Resp.'s Supp. Ans.* (Docket No. 14), *Ex. 2*, at p. 1-2.

Petitioner. While Petitioner was in Carter's vehicle, the victim came out to the street, saw Carter and Petitioner in the car, and exclaimed "Oh, my gosh, another woman." After being discovered by the victim, Carter and Petitioner drove away and circled the neighborhood. Carter dropped Petitioner off shortly thereafter. Carter next heard from Petitioner around 1:30 pm that afternoon. Petitioner told her that once Carter dropped him off, he and the victim argued about Carter, that he "had to pack a bag and leave" and asked if he could stay with Carter. Carter refused. A videotape and bank records admitted at trial showed that Petitioner withdrew one hundred dollars from Cambridge Trust bank at 1:30 pm that same afternoon.

In the early morning of February 24, Petitioner arrived in North Carolina and began staying with his brother. That same day, he applied for a job at a Wal-Mart where his brother was employed. Petitioner told the general manager of the store that he had had an argument with his wife in Boston and that he was moving to Raleigh and looking for a full-time job. Also on February 24, Petitioner called the victim's parents. Over the phone, Petitioner told the victim's parents that he was in North Carolina where his brother lived, he had left the apartment at 10 am the previous day, he couldn't get in touch with the victim, and he was worried about the victim. When Petitioner provided conflicting details about his interactions with the victim in the hours before he left for North Carolina, the victim's parents became alarmed and went to check on their daughter. When they arrived, the apartment was locked. After obtaining keys from the building's rental agent, they entered the apartment and discovered the victim's body on the floor. Her body was stiff because rigor mortis had set in. Police officers investigating the crime scene testified that there were no signs of forced entry into the apartment.

On February 25, Massachusetts state police interviewed Petitioner by telephone. Petitioner provided shifting explanations to the police of how and why he left for North Carolina.

On February 26, Petitioner called a friend of the victim, Denise Williams, and told her that he and the victim had "got into a fight, and things went bad, and I left." Later that day he was arrested for the victim's murder.

At trial, the Commonwealth's medical examiner, Dr. Richard Evans, testified that the victim's death was due to manual strangulation. Dr. Evans offered the opinion that the victim died between eight and twenty-four hours before the time the body was photographed by police on February 24. This placed the earliest possible time of death around midday on Wednesday, February 23, the same day the victim discovered Petitioner's affair with Carter. The Commonwealth's forensic DNA analyst testified that scrapings taken from the victim's fingernails suggested that male DNA was present and Petitioner could not be excluded as a potential source of that DNA.

*Procedural History*

Following his conviction at trial Petitioner appealed to the SJC, raising the following claims: (1) the evidence presented at trial was insufficient to support the jury's verdict; (2) the trial judge erred by admitting into evidence the victim's statements about a previous assault on her by Petitioner; (3) the trial judge erred by refusing to instruct the jury on the elements of involuntary manslaughter; and (4) Petitioner was denied the effective assistance of counsel by the failure of trial counsel to challenge certain aspects of the Commonwealth's case. *Linton*, 456 Mass. at 535-36, 924 N.E.2d 722. The SJC rejected each of Petitioner's claims. *Id.* at 735, 738, 739, 740-41, 924 N.E.2d 722. Pursuant to its duty to review the entire record in a capital case under Mass. Gen. Laws ch. 278 § 33E, the SJC addressed two additional evidentiary issues not raised by Petitioner on appeal: (1) whether a videotape of Petitioner withdrawing money from an ATM around the time of the murder was properly admitted; and (2) whether DNA evidence

taken from the victim was properly admitted. The SJC found no error that produced a substantial likelihood of a miscarriage of justice and accordingly affirmed Petitioner's conviction. *Id.* at 744, 924 N.E.2d 722.

The SJC's ruling became final 90 days later upon expiration of Petitioner's time for filing a petition for a writ of certiorari in the U.S. Supreme Court. *See Kater v. Maloney*, 459 F.3d 56, 66 n.8 (1st Cir. 2006) (citing *Caspari v. Bohlen*, 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994)) (stating that a state conviction and sentence becomes final "when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied."); *see also* Sup. Ct. R. 13.1 (providing that a petition for writ of certiorari is timely when filed with the Supreme Court within 90 days after entry of judgment). On July 8, 2011, Petitioner timely filed a Petition for a Writ of Habeas Corpus in this Court.[2] Petitioner asserts that the SJC's rulings on (1) the confrontation clause; (2) the sufficiency of evidence; and (3) ineffective assistance of counsel are contrary to, or involve an unreasonable application of, clearly established federal law under § 2254(d)(1). Petitioner raised each of these claims before the SJC and therefore properly exhausted remedies available in state court. *See* 28 U.S.C. § 2254(b)(1).

## Discussion

### *Standard of Review*

Petitioner's claims that his federal rights were violated during the course of his state court proceedings are reviewed under the standards set forth in the Antiterrorism and Effective Death

---

[2] On June 4, 2010, Petitioner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 with this Court challenging the validity of the warrant authorizing his extradition from North Carolina to Massachusetts. On June 10, 2011, this Court, per Judge Saylor, dismissed the petition without prejudice for failure to exhaust state remedies. *See Resp.'s Supp. Ans.* (Docket No. 14), *Ex. 7*, at p. 5. "A habeas petition filed in the district court after an initial habeas petition was unadjudicated on its merits and dismissed for failure to exhaust state remedies is not a second or successive petition." *Slack v. McDaniel*, 529 U.S. 473, 485-86, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Therefore, Petitioner's claims are not subject to dismissal under 28 U.S.C. § 2244(2).

Penalty Act ("AEDPA"), 28 U.S.C. § 2254. Under AEDPA, a federal court will grant habeas corpus relief only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d)(1), a federal court may grant habeas relief if the state court "'applies a rule that contradicts the governing law set forth in our cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from our precedent.'" *Dagley v. Russo*, 540 F.3d 8, 16 (1st Cir. 2008) (quoting *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002)). Under the "unreasonable application" clause of § 2254(d)(1), Petitioner must "demonstrate 'that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Scoggins v. Hall*, No. 12-2338, 2014 WL 4197942, *4 (1st Cir. 2014) (quoting *Harrington v. Richter*, — U.S. —, — - —, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624 (2011)). In other words, "the state court's decision is not vulnerable unless it evinces some increment of incorrectness beyond mere error." *Leftwich v. Maloney*, 532 F.3d 20, 23 (1st Cir. 2008). Additionally, AEDPA requires a federal habeas court to presume correct the factual determinations made by state courts, unless Petitioner can meet "the burden of rebutting the presumption of correctness by clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1).

*Ground One: Petitioner's Confrontation Clause Claim*

Petitioner asserts that the trial judge admitted testimonial hearsay statements by the victim in violation of Petitioner's constitutional right to confront witnesses against him. Petitioner further asserts that the SJC's decision to affirm the trial judge's ruling was both contrary to, and involved an unreasonable application of, clearly established federal law.

At trial, the victim's father testified that in September 2004 he received a phone call from the victim in which she was crying and asked him to pick her up from the apartment she shared with Petitioner. *Linton*, 456 Mass. at 548-49, 924 N.E.2d 722. When he arrived, the victim was "hysterical" and "still crying." *Id.*, 924 N.E.2d 722. On the way back to the father's house, the victim stated that she and Petitioner had argued and that when she tried to leave Petitioner choked her until she lost consciousness. *Id.*, 924 N.E.2d 722. These statements were made approximately 20 minutes after the attack had occurred, while the victim was still upset. *Id.*, 924 N.E.2d 722. Over Petitioner's objection, the trial judge admitted the victim's account of the attack as an excited utterance for the purpose of showing that a hostile relationship existed between Petitioner and the victim. *Id.* at 737-38, 924 N.E.2d 722.

The Sixth Amendment provides that a criminal defendant "shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The primary concern of the Confrontation Clause "is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *U.S. v. Ventura-Melendez*, 275 F.3d 9, 15 (1st Cir. 2001) (quoting *Maryland v. Craig*, 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990)). The confrontation right prohibits the admission of testimonial hearsay evidence offered against a criminal defendant unless the declarant is unavailable to testify and the defendant had a prior opportunity for cross-

examination. *U.S. v. Earle*, 488 F.3d 537, 542 (1st Cir. 2008). The leading case on the relationship between hearsay and the Confrontation Clause is *Crawford v. Washington*, where the Supreme Court first drew the distinction between "testimonial" and "nontestimonial" hearsay. 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Court has since made clear that the Confrontation Clause only protects a defendant if the hearsay statements being offered are "testimonial." *U.S. v. Pelletier*, 666 F.3d 1, 9 (1st Cir. 2011) (citing *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)). The threshold question, therefore, is whether the challenged hearsay statement is testimonial; if not, the Confrontation Clause does not apply. *U.S. v. Cameron*, 699 F.3d 621, 639 (1st Cir. 2012).

The Supreme Court has not provided a comprehensive definition of "testimonial." *U.S. v. Phoeun Lang*, 672 F.3d 17, 22 (1st Cir. 2012). In *Crawford*, the Court indicated that the term included statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," *Crawford*, 541 U.S. at 52, 124 S.Ct. 1354, including "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68, 124 S.Ct. 1354. In *Davis v. Washington*, the Court attempted to clarify the definition in the context of police interrogation. Statements made during police interrogation are nontestimonial when made "under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis*, 547 U.S. at 822, 126 S.Ct. 2266. They are testimonial, however, if "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.*, 126 S.Ct. 2266.

The statements here were not made by the victim to police, but to her father. The law on this point, at least as determined by the U.S. Supreme Court, remains unclear. The Court in

*Davis* expressly declined to reach this issue, stating that its holding made it "unnecessary to consider whether and when statements made to someone other than law enforcement personnel are 'testimonial.'" *Id.* at 823 n.2., 126 S.Ct. 2266. On the occasions where the First Circuit has addressed this circumstance, it has consistently found that statements made to non-law enforcement personnel are not testimonial. *See U.S. v. Pelletier*, 666 F.3d 1, 9-10 (1st Cir. 2011) (finding that statements made from one inmate to another under informal circumstances were not testimonial); *U.S. v. Castro-Davis*, 612 F.3d 53, 65 (1st Cir. 2010) (finding that statements made by defendant to his mother in a recorded telephone conversation were not testimonial); *Horton v. Allen*, 370 F.3d 75, 84 (1st Cir. 2004) (finding that statements made to an acquaintance during a private telephone conversation were not testimonial). Other circuits have arrived at the same conclusion. *See, e.g.*, *U.S. v. Boyd*, 640 F.3d 657, 665 (6th Cir. 2011) (asserting that "statements made to friends and acquaintances are non-testimonial"); *Rust v. Hall*, 346 Fed. App'x. 163, 165 (9th Cir. 2009) (finding that a witness statement made to a lay person shortly after the witness was assaulted was not testimonial); *U.S. v. Peneaux*, 432 F.3d 882, 896 (8th Cir. 2005) (finding that statements made to a physician seeking to provide medical aid are presumptively nontestimonial).

Turning to Petitioner's claim, the SJC's consideration of the Confrontation Clause issue was not "contrary to" the U.S. Supreme Court's precedents. The SJC applied the standards set out in *Crawford* and *Davis* in determining that the victim's hearsay statements were nontestimonial. *Linton*, 456 Mass. at 547-50, 924 N.E.2d 722. As a result, the SJC did not apply "a rule that contradicts the governing law set forth in our cases." *Dagley v. Russo*, 540 F.3d at 16. Further, Petitioner has not cited to any Supreme Court case reaching a different result than the

9

SJC on materially indistinguishable facts. Therefore, the SJC's decision was not contrary to clearly established federal law.

Nor did the SJC's decision involve an unreasonable application of *Crawford* and its progeny. "To meet this standard, a petitioner must establish that the state court decision identifies the correct governing legal principle, but applies it in an objectively unreasonable manner to the facts of the case." *Id.* at 18 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). In applying *Crawford* and *Davis*, the SJC acknowledged that because Petitioner had no opportunity to cross-examine the now-deceased victim, admission of her statements would violate the confrontation clause if they were testimonial. 456 Mass. at 550, 924 N.E.2d 722. The court found that the statements were not "testimonial per se," because the statements did not fall within the core class of testimonial statements identified in *Crawford. Id*., 924 N.E.2d 722. The SJC went on to find that the statements were also not "testimonial in fact" because "a reasonable person in the victim's situation—that is, still crying and hysterical after being choked to the point of unconsciousness—would not have anticipated that her statements to her father would be used against the assailant when she did not report the crime to the police or the court." *Id.*, 924 N.E.2d 722.

Petitioner asserts that the victim's statements were testimonial because at the time they were made, criminal prosecution of Petitioner for the assault was still possible. In so doing, Petitioner essentially argues for *de novo* review of its claim without regard to the deferential review mandated by AEDPA. *See* § 28 U.S.C. 2254. This is not sufficient under § 28 U.S.C. 2254. The SJC carefully examined the record, applied the Supreme Court's Confrontation Clause precedents, and provided a reasoned analysis in concluding that the victim's statements to her father were not testimonial. Indeed, the SJC's opinion comports with the decisions of the

First Circuit and other U.S. Courts of Appeals that have found statements made to non-law enforcement personnel nontestimonial. The SJC's identical conclusion on a question of law not yet answered by the U.S. Supreme Court is not "so lacking in justification that [it constitutes] an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Scoggins*, 2014 WL 4197942, at *4. Therefore, the SJC's application of the Supreme Court's Confrontation Clause precedents was not unreasonable.

*Ground Two: Petitioner's Sufficiency of Evidence Claim*

Petitioner next argues that the evidence of Petitioner's guilt was constitutionally insufficient to support his conviction. At the close of the Commonwealth's case, Petitioner moved for a required finding of not guilty pursuant to Mass R. Crim. P. 25.[3] *Linton*, 456 Mass. 543, 924 N.E.2d 722. The trial judge denied the motion. Petitioner argued on appeal that the denial of the motion was error, because the evidence was insufficient as a matter of law to support a conviction for murder in the first degree by means of extreme atrocity and cruelty. *Id.*, 924 N.E.2d 722. The SJC affirmed the trial judge's ruling. Petitioner now asserts that this decision was both contrary to, and involved an unreasonable application of, clearly established federal law as determined by the U.S. Supreme Court.

Sufficiency of evidence claims are governed by the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Jackson* provides that the constitutional right to due process guarantees "that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." 443 U.S. at 316, 99 S.Ct. 2781. The relevant test is "'whether, after viewing the evidence in the light

---

[3] The rule provides that a judge "shall enter a finding of not guilty of the offense charged . . . if the evidence is insufficient as a matter of law to sustain a conviction on the charge." Mass. R. Crim. P. 25(a).

most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *O'Laughlin v. O'Brien*, 568 F.3d 287, 299 (1st Cir. 2009) (quoting *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. 2781) (emphasis in original). In evaluating the evidence, the reviewing court must exercise "some degree of intellectual rigor," and not credit "evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative." *Leftwich v. Maloney*, 532 F.3d 20, 23 (1st Cir. 2008) (quoting *U.S. v. Spinney*, 65 F.3d 231, 234 (1st Cir. 1995)). For a federal habeas court reviewing a petitioner's sufficiency of evidence claim, the question is whether the state court's determination was "contrary to" the Supreme Court's ruling in *Jackson*, or an "unreasonable application" of the *Jackson* standard. *See Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001) ("The habeas question of whether the state court decision is objectively unreasonable is layered on top of the underlying standard governing the constitutional right asserted.").

Before examining the SJC's decision on Petitioner's sufficiency of evidence claim under § 2254(d), however, there is a threshold question of whether the state court determination is entitled to AEDPA deference at all. In addressing Petitioner's sufficiency of evidence claim, the SJC did not apply *Jackson* by name, but instead used a standard derived from Massachusetts state law and precedents.[4] *Linton*, 456 Mass. at 544, 924 N.E.2d 722. Specifically, the SJC relied on a series of Massachusetts cases stemming from *Commonwealth v. Latimore*, 378 Mass. 671, 393 N.E.2d 370 (1979). The First Circuit has held that where a state court decision is framed in terms of state law, the adjudication may receive § 2254(d)(1) deference "so long as the state standard is at least as protective of the defendant's rights as its federal counterpart." *Leftwich v.*

---

[4] The standard employed by the SJC was "whether the evidence offered by the Commonwealth, together with reasonable inferences therefrom, when viewed in its light most favorable to the Commonwealth, was sufficient to persuade a rational jury beyond a reasonable doubt of the existence of every element of the crime charged." *Linton*, 456 Mass. at 544, 924 N.E.2d 722.

*Maloney*, 532 F.3d 20, 23-24 (1st Cir. 2008). In *Latimore*, the SJC expressly adopted the federal constitutional standard for sufficiency of evidence challenges as set out in *Jackson*. *Latimore*, 378 Mass. 671, 677-78, 393 N.E.2d 370 (citing *Jackson*, 443 U.S. 307, 99 S.Ct. 2781). Therefore, the SJC's decision on Petitioner's sufficiency of evidence claim is entitled to deference under 28 U.S.C. 2254(d)(1).

Turning to Petitioner's claim for §2254(d) relief based on insufficiency of the evidence, the SJC's decision on this issue was not "contrary to" clearly established federal law. As stated above, the SJC applied the correct constitutional standard when it evaluated Petitioner's claims in light of *Latimore* and its state progeny. *Latimore* expressly adopted the sufficiency of evidence standard established by *Jackson*. Therefore, the SJC did not apply "a rule that contradicts the governing law." *Dagley*, 540 F.3d at 16. Further, Petitioner has not cited to any Supreme Court case reaching a different result than the SJC on materially indistinguishable facts. As a result, the SJC's decision was not "contrary to" clearly established federal law.

The remaining question is whether the SJC's decision to affirm constituted an unreasonable application of the *Jackson* standard. Petitioner asserts that the Commonwealth's case relied on inference upon inference in a manner not sufficient to support his conviction. However, direct evidence is not necessary to sustain a conviction under *Jackson*. *See Magraw v. Roden*, 743 F.3d 1, 6 (1st Cir. 2014). The evidence supporting conviction in this case, although circumstantial, was not "unreasonable, insupportable, or overly speculative." *Leftwich*, 532 F.3d at 23. Petitioner, who lived with the victim, had a key to the locked apartment where the victim was found dead. *Linton*, 456 Mass. at 544, 924 N.E.2d 722. Petitioner had a powerful motive for the murder once the victim discovered and threatened Petitioner's affair with Carter, whom he had described as his "soul mate." *Id*. at 545, 924 N.E.2d 722. The timeline presented at trial

suggested that Petitioner was in the apartment around the time of the victim's death. *Id*. at 544-45, 924 N.E.2d 722. Petitioner's ATM withdrawal and impromptu travel to North Carolina on the day of the murder, as well as his conflicting descriptions of the events of February 23, suggested his consciousness of guilt. *Id*., 924 N.E.2d 722. Finally, the defense presented no evidence pointing to the existence of a third-party murderer, and the alternative explanation that someone else had entered the apartment to strangle the victim was effectively discredited by the prosecution's evidence. *Id*., 924 N.E.2d 722.

The SJC examined this record and reasonably determined that, viewed in the light most favorable to the prosecution, the evidence was sufficient for a rational juror to find Petitioner guilty. This result comports with the First Circuit's recent analysis in *Magraw v. Roden*, where the court dismissed a habeas petitioner's sufficiency of evidence claim. 743 F.3d 1 (1st Cir. 2014). In that case, the Massachusetts Appeals Court ("MAC") had affirmed the second-degree murder conviction of the petitioner, finding that the Commonwealth had presented sufficient evidence to allow a rational jury to convict the petitioner of murder. *Id.* at 4-5. Evaluating the MAC decision, the First Circuit observed that the evidence showed the petitioner had the means and motive to commit the murder, had been with the victim near the time of her death, and had provided a questionable explanation of the events surrounding the victim's death. *Id.* at 7. The First Circuit held that the MAC "did not unreasonably apply the *Jackson* standard in rejecting the petitioner's claim of evidentiary insufficiency." *Id.* at 7.

The *Magraw* court distinguished its underlying trial from that in *O'Laughlin v. O'Brien*, where the First Circuit granted habeas relief on sufficiency of evidence grounds. 568 F.3d 287 (1st Cir. 2009). In *O'Laughlin*, a jury in Massachusetts Superior Court convicted the petitioner of multiple counts of assault based entirely on circumstantial evidence. *Id.* at 289. Reviewing the

14

trial record, the First Circuit observed that the motive evidence presented by the Commonwealth was inconsistent with the severity of the assault, *id.* at 302, multiple individuals had an opportunity to commit the crime, *id.*, any consciousness of guilt evidence was minimally probative, *id.* at 303, and the defense had offered compelling evidence that a third-party assailant had committed the crime. *Id*. at 308. The weaknesses in the circumstantial evidence observed in *O'Laughlin* were not present in *Magraw*. *Magraw*, 743 F.3d at 6. Nor are they present in this case. The record shows that, just as in *Magraw*, the Commonwealth presented compelling evidence of Petitioner's motive, opportunity to commit the crime, and consciousness of guilt. Further, unlike in *O'Laughlin*, Petitioner did not present evidence of a third-party assailant. Given the strength of the evidence on the record, the SJC did not unreasonably apply the *Jackson* standard when it dismissed Petitioner's sufficiency of evidence claim.

Nor did the SJC unreasonably apply *Jackson* in finding sufficient evidence to support a conviction based on extreme atrocity or cruelty. Testimony by the medical examiner showed that the killer used such force while strangling the victim that it caused extensive bleeding in the victim's eyes, and the hyoid bone at the base of the victim's tongue became separated. *Linton*, 456 Mass. at 546, 924 N.E.2d 722. A full ninety seconds of pressure on the victim's airway would have been required before she lost consciousness. *Id.*, 924 N.E.2d 722. Bite marks on the victim's tongue indicated that she struggled to breathe as the killer choked off her airway. *Id.*, 924 N.E.2d 722. The SJC found that this evidence was sufficient to demonstrate multiple aggravating factors required under state law to support a finding of extreme atrocity or cruelty. *Id.* at 547, 924 N.E.2d 722. These aggravating factors included indifference to the victim's suffering, the victim's high degree of conscious suffering, and the overwhelming force applied during the strangulation. *Id.*, 924 N.E.2d 722. Once again, that a rational juror would conclude

15

based on this evidence that the killing was committed with extreme atrocity or cruelty is not "unreasonable, insupportable, or overly speculative." *Leftwich*, 532 F.3d at 23. Therefore, the SJC did not unreasonably apply *Jackson* when it found that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational juror to find extreme atrocity or cruelty.

*Ground Three: Petitioner's Ineffective Assistance of Counsel Claim*

Petitioner's third claim for habeas relief asserts that his constitutional right to effective assistance of counsel was violated by defense counsel's failure to challenge certain aspects of the Commonwealth's case. Specifically, Petitioner argues that the defense was constitutionally ineffective because his trial attorney failed to (1) present evidence of a third-party murderer; (2) challenge the Commonwealth's medical examiner on the victim's time of death either through cross-examination with a learned treatise or expert testimony; and (3) cross-examine the medical examiner on his poor administrative record. Petitioner asserts that the SJC's rejection of his ineffective assistance claims was both contrary to, and involved an unreasonable application of, clearly established federal law as determined by the U.S. Supreme Court.

Ineffective assistance of counsel claims are governed by the two-part test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defense counsel's assistance will be found constitutionally ineffective only if the defendant can show: (1) counsel's performance was deficient; and (2) the defendant was prejudiced as a result of the deficient performance. *Bucci v. U.S.*, 662 F.3d 18, 29 (1st Cir. 2011) (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052). To constitute deficient performance, counsel's actions must fall "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. The reviewing court "must indulge a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance." *Id*. at 689, 104 S.Ct. 2052. If deficient performance is demonstrated, a defendant must also satisfy the prejudice prong of the *Strickland* test by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. On habeas review, the question is not merely whether counsel was constitutionally ineffective, but whether the state court unreasonably applied the *Strickland* test. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, — U.S. —, — - —, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011) (internal citations omitted).

The SJC evaluated Petitioner's ineffective assistance claims for "a substantial likelihood of a miscarriage of justice" as is required in appeals of first-degree murder convictions in Massachusetts. *See* Mass. Gen. Laws ch. 278 §33E. This statutory standard is more favorable to Petitioner than the federal standard set out in *Strickland*. *Knight v. Spencer*, 447 F.3d 6, 10 (1st Cir. 2006). The First Circuit has held that "where the SJC applies its more favorable 'substantial likelihood of a miscarriage of justice' standard, its decision will not be deemed 'contrary to' the *Strickland* criterion." *Id.* at 15. Therefore, despite Petitioner's contention, the SJC's review of his ineffective assistance claims was not contrary to clearly established federal law.

To prevail, then, Petitioner must show that the SJC's denial of the ineffective assistance claim was an objectively unreasonable application of the deferential *Strickland* standard. Petitioner has failed to do so. For each of his ineffective assistance arguments, discussed in turn below, Petitioner has not made a showing that counsel's performance was deficient. Because each of Petitioner's claims fail at the first step of the *Strickland* test, I do not address the second.

17

### (1) Failure to Present Evidence of Third-Party Murderer

Petitioner argues that defense counsel should have presented more specific evidence that someone other than Petitioner committed the murder. Although Petitioner's affidavit named five individuals as potential alternative suspects, nothing in the affidavit or elsewhere in the record provided substantive support for the claim that someone else committed the murder. In fact, defense counsel had subpoenaed one of these potential suspects—the victim's former boyfriend—but ultimately did not call him as a witness. The SJC observed that, given the lack of evidence indicating the ex-boyfriend committed the murder, "defendant's trial counsel reasonably may have concluded that he could not connect the boy friend to the crime with anything other than sheer speculation." *Linton*, 456 Mass. at 554 n.16, 924 N.E.2d 722. *Strickland*'s first step requires a "'strong presumption' that counsel's strategy and tactics fall 'within the range of reasonable professional assistance,'" *Knight v. Spencer*, 447 F.3d at 15, and "the decision whether to call a particular witness is almost always strategic." *Horton v. Allen*, 370 F.3d 75, 86 (1st Cir. 2004) (quoting *Lema v. U.S.*, 987 F.2d 48, 54 (1st Cir. 1993)). Given the presumption of an attorney's effectiveness, trial counsel's decision to not offer more specific evidence of a third-party killer falls within the range of reasonable professional assistance. Adding the deference required by § 2254(d), the SJC was not objectively unreasonable in finding that counsel's failure to present third-party murderer evidence did not constitute ineffective assistance.

### (2) Failure to Challenge Medical Examiner on Time of Death

Petitioner contends that defense counsel should have challenged the Commonwealth's medical examiner, Dr. Richard Evans, on his estimate of the victim's time of death. Petitioner suggests that defense counsel could have discredited Dr. Evans' testimony either by cross-

18

examining him with learned treatises, or by calling a defense expert to refute Dr. Evans' testimony. According to Petitioner, this might have shown that the victim was killed during the period of time when Petitioner was en route to North Carolina. In rejecting this claim, the SJC found that nothing in Petitioner's affidavit or the record pointed to the actual existence of an expert witness or treatise that defense counsel could have used to contradict Dr. Evans. In the absence of any indication that an expert or treatise would have provided favorable evidence on the victim's time of death, it would be a reasonable strategic decision for counsel to forego such an attempt to discredit Dr. Evans' opinion. As the First Circuit has observed, counsel's performance cannot be deficient where the attorney declines to pursue a futile tactic. *See Vieux v. Pepe*, 184 F.3d 59, 64 (1st Cir. 1999). Therefore, starting with the "presumption that the challenged action was sound trial strategy," *Horton v. Allen*, 370 F.3d at 86, the SJC was not objectively unreasonable in finding that counsel's performance with respect to Dr. Evans' time-of-death testimony was not constitutionally ineffective.

### *(3) Failure to Cross-Examine Medical Examiner on Administrative Record*

Petitioner asserts that defense counsel provided ineffective assistance by failing to cross-examine Dr. Evans about administrative failures in the medical examiner's office while he was acting as chief. Petitioner cites a series of newspaper articles for the proposition that the office was in "shambles" under the leadership of Dr. Evans. The SJC denied Petitioner's claim on this ground on the theory that such extrinsic collateral evidence could have been properly excluded by the trial judge, and in any event was unlikely to materially influence the jury's view of Dr. Evans' medical opinion. *Linton*, 456 Mass. at 555, 924 N.E.2d 722. Although cross-examination of Dr. Evans' poor record as an office administrator may have had some impeachment value, the record shows defense counsel did cross-examine Dr. Evans on a number of topics, including the victim's alcohol consumption, drug use, and time of death. "When counsel focuses on some

issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Knight v. Spencer*, 447 F.3d at 17 (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)). A tactical decision to omit impeachment of an expert witness on an extrinsic collateral matter falls within the range of reasonable professional assistance. Once again, given the presumption of an attorney's effectiveness and the deference required by §2254(d), the SJC was not objectively unreasonable in rejecting this ineffective assistance claim.

## Conclusion

For the reasons stated above, Damion Linton's Petition For A Writ of Habeas Corpus (Docket No. 1) is ***denied***.

SO ORDERED.

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE